Thomas J. Salerno (Arizona Bar No. 007492)
tsalerno@ssd.com
Brian M. McQuaid (Arizona Bar No. 019541)
bmcquaid@ssd.com
Sara K. Regan (Arizona Bar No. 021988)
sregan@ssd.com
Andrew V. Banas (Arizona Bar No. 023886)
abanas@ssd.com
SQUIRE, SANDERS & DEMPSEY L.L.P.
Two Renaissance Square
40 North Central Avenue, Suite 2700
Phoenix, Arizona  85004
Telephone: (602) 528-4000
Facsimile: (602) 253-8129

Attorneys for Plaintiff Barton Colson

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Barton Colson, individually, | Case No. |
| Plaintiff, | |
| vs. | |
| Javad Maghami a/k/a Javad Ghaemmaghami and Marie DeBernardi Maghami a/k/a Marie DeBernardi Ghaemmaghami, husband and wife; Javad and Marie Maghami d/b/a Scottsdale Lamborghini and/or Scottsdale Motorsports; Lamborghini of Scottsdale LLC, an Arizona limited liability company; Motor Sports of Scottsdale, Inc., an Arizona corporation; Motorsports of Scottsdale No. 2, LLC, an Arizona limited liability company; and Automobili Lamborghini America, LLC, a Delaware Corporation, | **VERIFIED COMPLAINT** |
| | **JURY TRIAL REQUESTED** |
| Defendants. | |

1

1       Plaintiff Barton Colson, for his Complaint against Defendants Javad Maghami

2   a/k/a Javad Ghaemmaghami and Marie DeBernardi Maghami a/k/a Marie DeBernardi

3   Ghaemmaghami, husband and wife; Javad and Marie Maghami d/b/a Scottsdale

4   Lamborghini and/or Scottsdale Motorsports; Lamborghini of Scottsdale LLC, an Arizona

5   limited liability company; Motor Sports of Scottsdale, Inc., an Arizona corporation;

6   Motorsports of Scottsdale No. 2, LLC, an Arizona limited liability company; and

7   Automobili Lamborghini America, LLC, a Delaware Corporation (collectively,

8   "Defendants"), alleges as follows:

<strong><u>THE PARTIES</u></strong>

9

10       1.    Plaintiff Barton Colson ("Colson") is an individual residing in Vancouver,

11   Washington.

12       2.    Upon information and belief, Defendants Javad Maghami a/k/a Javad

13   Ghaemmaghami and Marie DeBernardi Maghami a/k/a Marie DeBernardi

14   Ghaemmaghami, husband and wife (the "Maghamis"), reside in Arizona and conduct

15   business in Maricopa County, Arizona.

16       3.    The Maghamis committed acts and omissions in Maricopa County, Arizona

17   out of which this action arises, and at all times material hereto were acting for and on

18   behalf of their marital community.

19       4.    Upon information and belief, at all times relevant to Colson's claims, the

20   Maghamis were doing business as Scottsdale Lamborghini and/or Scottsdale

21   Motorsports, which are both unincorporated entities located in Scottsdale, Arizona.

22       5.    The Maghamis are personally liable for all acts and omissions committed

23   by or on behalf of Scottsdale Lamborghini and/or Scottsdale Motorsports.

24       6.    Upon information and belief, at all times relevant to Colson's claims, the

25   Maghamis were principals of and were also doing business as Lamborghini of Scottsdale

26   LLC, an Arizona limited liability company with its principal place of business in

27   Scottsdale, Arizona.

28

2

7.     Upon information and belief, at all times relevant to Colson's claims, the Maghamis were principals of and were also doing business as Motor Sports of Scottsdale, Inc., an Arizona corporation with its principal place of business in Scottsdale, Arizona.

8.     Upon information and belief, at all times relevant to Colson's claims, the Maghamis were principals of and were also doing business as Motorsports of Scottsdale No. 2, LLC, an Arizona limited liability company with its principal place of business in Scottsdale, Arizona.

9.     Upon information and belief, defendant Automobili Lamborghini America, LLC ("Lamborghini America") is a Delaware limited liability company, doing business in Maricopa County, Arizona.

10.    Upon information and belief, at all times relevant to Colson's claims, the Maghamis, Scottsdale Lamborghini, Scottsdale Motorsports, Lamborghini of Scottsdale LLC, Motor Sports of Scottsdale, Inc., and Motorsports of Scottsdale No. 2, LLC (collectively the "Maghami defendants"), were acting as agents of, and on behalf of, Lamborghini America.

## JURISDICTION AND VENUE

11.    Jurisdiction and venue are proper in this Court pursuant to 28 U.S.C. § 1332(a)(l).

12.    The action is between citizens of different States.

13.    The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

14.    The amount in controversy exceeds the jurisdictional minimum for this Court.

## GENERAL ALLEGATIONS

15.    The Maghami defendants own and operate a car dealership known as Scottsdale Lamborghini and/or Scottsdale Motorsports (the "dealership").

16.    At the dealership, the Maghamis offer Lamborghini cars for sale.

17.   On or about September 24, 2007, Colson met with defendant Javad Maghami ("Maghami") at the dealership.

18.   During that meeting, Maghami and Colson discussed a rare and limited edition vehicle known as the Lamborghini Reventon.

19.   When Colson expressed interest in purchasing a Reventon, Maghami stated that he may be able to secure one.

20.   Maghami explained that, to purchase a Reventon, Colson would need to immediately place a $500,000 deposit be considered to purchase the car, and then Colson would need to pay an additional €600,000 prior to production of the Reventon.

21.   He then told Colson that there would be an additional amount, between €30,000-50,000, due at the delivery of the car.

22.   On or about September 24, 2007, Colson wrote the Maghami defendants a check for $500,000 as a deposit for a Reventon.  [*See* Check to Lamborghini of Scottsdale, attached hereto as Exhibit A.]

23.   The check was subsequently cashed.

24.   On the same day, Colson signed an agreement with the Maghami defendants for the purchase of a Reventon.  [*See* Purchase Agreement, attached hereto as Exhibit B.]

25.   Shortly after Colson signed the agreement and gave the Maghami defendants a check for $500,000, Colson was contacted by Maghami over the telephone.

26.   Maghami told Colson that because Lamborghini's production of Reventons was limited to 20 Reventons, each Reventon would have a specific production number.

27.   When Colson requested Reventon Number 1 or Reventon Number 20, Maghami informed him that those were not available but that Colson could purchase Reventon Number 10.

28.   During that conversation, Maghami also told Colson that Colson would need to submit an application for Reventon Number 10.

29.     Maghami explained that Colson was required to provide information about himself so an application could be submitted to Lamborghini's Italian headquarters, which would then determine whether Colson could purchase Reventon Number 10.

30.     Maghami then told Colson that when Colson's application was approved by Lamborghini's Italian headquarters, Colson was required to remit €600,000 (in addition to the $500,000 Colson already paid).

31.     When Maghami and Colson spoke about the application, Maghami told Colson that Colson could dictate the necessary information to Maghami, and then Maghami would complete the application and forward it to Lamborghini's Italian headquarters.

32.     Thus, on that phone call, Colson answered Maghami's questions and Maghami told Colson that Maghami would complete the application and submit it to Lamborghini's Italian headquarters.

33.     Colson understood that Maghami sent the application to Lamborghini's Italian headquarters.

34.     After this application process, on or about January 16, 2008, Colson again spoke with Maghami about Reventon Number 10.

35.     Maghami informed Colson that Colson's application to purchase Reventon Number 10 was approved by Lamborghini's Italian headquarters and that Colson must remit the €600,000 so that Reventon Number 10 could be assembled.

36.     Maghami told Colson at that time that Reventon Number 10 would be completed in August or September 2008.

37.     At that time, Maghami gave Colson instructions on how to wire the €600,000 into the Maghami defendants' account.  Maghami told Colson that Colson must wire the money to the Maghami defendants within 24 hours because the money must be at Lamborghini's Italian headquarters within 48 hours of the application approval. Maghami also stated that he would wire Colson's money to Lamborghini's Italian headquarters the next day.

38.     On or about January 16, 2008, Colson wired $881,000 into Wells Fargo Account Number 402001823, held by defendant Motor Sports of Scottsdale Inc.  [*See* Wire Transfer Confirmation, Jan. 16, 2008, attached hereto as Exhibit C.]

39.     Colson received confirmation from Wells Fargo Bank that the wire transfer was complete.

40.     Despite that Marie Maghami promised to send a confirmation of the wire that the Maghami defendants sent to Lamborghini's Italian headquarters, Colson never received a receipt for the wire transfer or for the purchase of the vehicle from the Maghami defendants.

41.     To secure a receipt Colson began contacting the Maghami defendants.

42.     At Colson's direction, his accountant Michelle Hansberry also began calling the Maghami defendants in an attempt to secure a receipt for Reventon Number 10.

43.     For several months Colson did not hear from the Maghami defendants, despite repeated attempts to reach them.

44.     In August 2008, Colson personally visited a Lamborghini assembling factory in Italy.

45.     The personnel at the factory could not locate any record of Colson's purchase of Reventon Number 10, but promised to review their records and stay in touch with Colson.

46.     Colson did not receive any follow-up communications with the personnel at the Italian factory.

47.     Colson made several further attempts to contact the Maghami defendants and personnel at the factory in the summer of 2008 regarding Colson's purchase of Reventon Number 10, but did not receive a response from them.

48.     At the same time, Colson's brother Brad Colson began contacting the Maghami defendants to secure the paperwork Colson had earlier requested regarding Reventon Number 10.

49.     The Maghami defendants never sent any confirmation of the wire transfer.

1
2
3

50.     In September 2008, Colson contacted Pietro Frigerio, the Chief Operating Officer of defendant Lamborghini America to inquire about the status of Reventon Number 10.

4
5

51.     Frigerio informed Colson that Reventon Number 10 had been sold to another buyer.

6
7

52.     Frigerio told Colson that no Reventons had been allotted to the Maghami defendants.

8

53.     Colson never received Reventon Number 10.

9
10

54.      Frigerio told Colson that Colson never will receive that car or any other Reventon because they have all been sold.

11
12

55.     Defendants have thus improperly taken $1,381,000 from Colson between September 2007 and January 2008.

13
14

56.     Colson has knowledge that at least one 2009 Lamborghini Reventon, with the same specifications as Reventon Number 10, was recently sold for $2.4 million.

15
16
17

57.     At the same time that Colson was placing his $500,000 deposit for Reventon Number 10, on or about September 2007, Colson also purchased from the Maghami defendants a 2005 Lamborghini Murciélago for $250,000.

18

58.     Colson paid for that car with a check, and the check has been cashed.

19

59.     At the time of purchase, Colson did not receive the title to that car.

20

60.     Colson is the rightful owner of the Murciélago.

21
22

61.     Despite making several demands for the title to that car, the Maghami defendants have never given Colson title to the Murciélago.

23
24

62.     Upon information and belief, the Maghami defendants own or have an interest in property located in Maricopa County, Arizona.

25

63.     The Maghami defendants have a bank account at Wells Fargo.

26
27
28

7

## COUNT I

### (Breach of Contract)

64. All allegations in the previous paragraphs are incorporated as if fully set forth herein.

65. On or about September 24, 2007, Colson and the Maghami defendants entered into a Purchase Agreement (the "Agreement"). [*See* Exhibit B.]

66. Pursuant to the terms of the Agreement, Colson has paid defendants the sum of $1,381,000 and defendants agreed to sell Colson a 2009 Lamborghini Reventon – specifically Reventon Number 10.

67. Defendants have refused to deliver Reventon Number 10 to Colson.

68. As described above, defendants have breached the Agreement by failing to give Colson Reventon Number 10 after Colson paid $1,381,000 for that vehicle.

69. As a direct and proximate result of defendants' material breaches of the Agreement, Colson sustained harm and injury, including but not limited to, actual and consequential damages in an amount to be determined at trial.

70. Pursuant to the terms of the Agreement, defendants are obligated to deliver to Colson Reventon Number 10.

71. To date, defendants have not delivered Reventon Number 10.

72. Colson is a "judgment creditor" as that term is defined by A.R.S. § 12-1570 in that Colson seeks an order from the Court "pursuant to chapter 14 of this title allowing [him] to garnish monies before final judgment on the underlying action."

73. Colson's claims herein arise out of contract. Colson, therefore, is entitled to an award of costs, expenses and attorneys' fees incurred herein pursuant to A.R.S. §12-341.01.

## COUNT TWO

### (Breach of the Covenant of Good Faith and Fair Dealing)

74. All allegations in the previous paragraphs are incorporated as if fully set forth herein.

8

75.     Pursuant to Arizona law, the Agreement contained an implied covenant of good faith and fair dealing whereby defendants were prohibited from depriving Colson of the benefits of the Agreement.

76.     Upon information and belief, contrary to their duty to act in good faith, defendants deprived Colson of the benefits of the bargain by informing Colson that Reventon Number 10 was available for sale, when defendants knew that Reventon Number 10 had already been sold to another individual.

77.     Upon information and belief, contrary to its duty to act in good faith, defendants deprived Colson of the benefits of the bargain by accepting Colson's payments for Reventon Number 10 knowing that defendants never would provide Colson with Reventon Number 10.

78.     Contrary to their duty to act in good faith, defendants deprived Colson of the benefits of the bargain by refusing to provide Colson with Reventon Number 10 after Colson had paid for Reventon Number 10.

79.     Contrary to their duty to act in good faith, defendants deprived Colson of the benefits of the bargain by refusing to refund Colson's $500,000 deposit after learning that defendants could not deliver Reventon Number 10 or any other Reventon because all of the 2009 Reventons that had been manufactured or would be manufactured had already been sold.

80.     Contrary to their duty to act in good faith, defendants deprived Colson of the benefits of the bargain by accepting Colson's $881,000 payment on or about January 16, 2008, when defendants either knew or should have known that defendants could not deliver Reventon Number 10 or any other Reventon because all of the 2009 Reventons that had been manufactured or would be manufactured had already been sold.

81.     Contrary to their duty to act in good faith, defendants deprived Colson of the benefits of the bargain by refusing to refund Colson's $1,381,000 after learning that defendants could not deliver Reventon Number 10 or any other Reventon because all of

the 2009 Reventons that had been manufactured or would be manufactured had already been sold

82.     As a proximate cause of defendants' breaches, Colson has been damaged in an amount to be determined at trial.

83.     Colson's claims herein arise out of contract.  Colson, therefore, is entitled to an award of costs, expenses and attorneys' fees incurred herein pursuant to A.R.S. §12-341.01.

## COUNT THREE

### (Unjust Enrichment)

84.     All allegations in the previous paragraphs are incorporated as if fully set forth herein.

85.     Upon information and belief, defendants accepted payment from Colson for Reventon Number 10 but never gave Colson Reventon Number 10.

86.     Defendants were therefore unjustly enriched by receiving payments for goods they never provided.

87.     Colson was consequently impoverished by making payments for Reventon Number 10, which he did not receive.

88.     Defendants were not justified in receiving or retaining payments from Colson for a product defendants never provided.

89.     Colson has no legal remedy to redress the excess payments he made to defendants.

## COUNT FOUR

### (Negligent or Intentional Misrepresentation)

90.     All allegations in the previous paragraphs are incorporated as if fully set forth herein.

91.     On September 24, 2007, Maghami informed Colson that a 2009 Lamborghini Reventon was available for purchase.

92.      Maghami later informed Colson that the Reventon that was available for purchase was Reventon Number 10.

93.      Maghami represented to Colson that Colson would receive Reventon Number 10 if Colson signed the Agreement and paid defendants $1,381,000.

94.      Despite these representations, defendants sold Reventon Number 10 to a different buyer.

95.      Upon information and belief, the representations identified in ¶ 91 through ¶ 93 herein were false.

96.      Upon information and belief, defendants knew or should have known that the representations identified in ¶ 91 through ¶ 93 herein were false or had reckless disregard for their truth or falsity.

97.      Defendants failed to inform Colson that the representations identified in ¶ 91 through ¶ 93 herein were false.

98.      Colson justifiably relied on defendants' representations as well as their omissions when he signed the Agreement and paid defendants $1,381,000.

99.      Defendants knew or should have known that Colson would rely on their representations in signing the Agreement and paying defendants $1,381,000.

100.    As a proximate cause of defendants' misrepresentations and/or omissions, Colson has been damaged in an amount to be determined at trial.

101.    Defendants acted with actual malice and intent and with a sufficient evil mind such that Colson is entitled to recover punitive damages.

102.    Colson's claims herein arise out of contract.  Colson, therefore, is entitled to an award of costs, expenses and attorneys' fees incurred herein pursuant to A.R.S. §12-341.01.

## COUNT FIVE

### (Fraudulent Concealment)

103.    All allegations in the previous paragraphs are incorporated as if fully set forth herein.

104.    On September 24, 2007, Maghami informed Colson that a 2009 Lamborghini Reventon was available for purchase.

105.    Maghami later informed Colson that the Reventon that was available for purchase was Reventon Number 10.

106.    Maghami represented to Colson that Colson would receive Reventon Number 10 if Colson signed the Agreement and paid defendants $1,381,000.

107.    Despite these representations, defendants sold Reventon Number 10 to a different buyer.

108.    Upon information and belief, the representations identified in ¶ 104 through ¶ 106 herein were false.

109.    Upon information and belief, defendants knew or should have known that the representations identified in ¶104 through ¶106 herein were false or had reckless disregard for their truth or falsity.

110.    Defendants failed to inform Colson that the representations identified in ¶ 104 through ¶ 106 herein were false.

111.    Colson justifiably relied on defendants' representations as well as their omissions when he signed the Agreement and paid defendants $1,381,000.

112.    Upon information and belief, defendants knew or believed when making the representations to Colson that such representations were materially misleading because they failed to include additional or qualifying information.

113.    Colson justifiably relied on defendants' affirmative representations as well as their omissions.

114.    Defendants knew or should have known that Colson would rely on their representations in signing the Agreement and paying defendants $1,381,000.

115.    As a proximate cause of defendants' actions, Colson suffered damages in an amount to be determined at trial.

116.    Defendants acted with actual malice and intent and with a sufficient evil mind such that Colson is entitled to recover punitive damages.

117.   Colson's claims herein arise out of contract.  Colson, therefore, is entitled to an award of costs, expenses and attorneys' fees incurred herein pursuant to A.R.S. §12-341.01.

## COUNT SIX

### (Fraud)

118.   All allegations in the previous paragraphs are incorporated as if fully set forth herein.

119.   On September 24, 2007, Maghami informed Colson that a 2009 Lamborghini Reventon was available for purchase.

120.   Maghami later informed Colson that the Reventon that was available for purchase was Reventon Number 10.

121.   Maghami represented to Colson that Colson would receive Reventon Number 10 if Colson signed the Agreement and paid defendants $1,381,000.

122.   Despite these representations, defendants sold Reventon Number 10 to a different buyer.

123.   Upon information and belief, the representations identified in ¶ 119 through ¶ 121 herein were false.

124.   Upon information and belief, defendants knew or should have known that the representations identified in ¶ 119 through ¶ 121 herein were false, or had reckless disregard for their truth or falsity.

125.   Defendants failed to inform Colson that the representations identified in ¶ 119 through ¶ 121 herein were false.

126.   Colson justifiably relied on defendants' representations as well as their omissions when he signed the Agreement and paid defendants $1,381,000.

127.   Upon information and belief, defendants knew or believed when making the representations to Colson that such representations were materially misleading because they failed to include additional or qualifying information.

128.   Colson justifiably relied on defendants' affirmative representations as well as their omissions.

129.   Defendants knew or should have known that Colson would rely on their representations in signing the Agreement and paying defendants $1,381,000.

130.   As a proximate cause of defendants' actions, Colson suffered damages in an amount to be determined at trial.

131.   Defendants acted with actual malice and intent and with a sufficient evil mind such that Colson is entitled to recover punitive damages.

132.   Colson's claims herein arise out of contract.  Colson, therefore, is entitled to an award of costs, expenses and attorneys' fees incurred herein pursuant to A.R.S. §12-341.01.

## COUNT SEVEN

### (Aiding and Abetting Fraud)

133.   All allegations in the previous paragraphs are incorporated as if fully set forth herein.

134.   Upon information and belief, the Maghami defendants committed fraud and/or breached duties to Colson, causing injury to Colson, when they made the misrepresentations and/or omissions to Colson identified in ¶ 91 through ¶ 93 herein.

135.   Upon information and belief, the Maghami defendants committed fraud and/or breached duties to Colson, causing injury to Colson, when they accepted Colson's $1,381,000 in payments but failed to deliver Reventon Number 10 or any other 2009 Lamborghini Reventon.

136.   Upon information and belief, Lamborghini America knew that the Maghami defendants breached their duties to and/or committed fraud against Colson.

137.   Upon information and belief, Lamborghini America substantially assisted or encouraged the Maghami defendants in the achievement of the fraud against Colson by, *inter alia*, licensing the Maghami defendants to sell Lamborghinis and failing to properly oversee and/or control the Maghami defendants' operations.

138.    Upon information and belief, Lamborghini America substantially assisted or encouraged the Maghami defendants in the achievement of the fraud against Colson by, *inter alia*, selling Reventon Number 10 to another individual even though the Maghami defendants had accepted Colson's $1,381,000 as payments for Reventon Number 10.

139.    As a proximate cause of Lamborghini America's actions, Colson suffered damages in an amount to be determined at trial.

140.    Lamborghini America acted with actual malice and intent and with a sufficient evil mind such that Colson is entitled to recover punitive damages.

141.    Colson's claims herein arise out of contract.  Colson, therefore, is entitled to an award of costs, expenses and attorneys' fees incurred herein pursuant to A.R.S. §12-341.01.

## COUNT EIGHT

### (Application for Provisional Remedy: Garnishment)

142.    All allegations in the previous paragraphs are incorporated as if fully set forth herein.

143.    Upon information and belief, defendant Motor Sports of Scottsdale, Inc. has a bank account with Wells Fargo Bank, account number 4020010823.  Upon information and belief, the Wells Fargo Bank branch located at 711 W. Broadway Tempe, Arizona 85282 is holding monies in account number 4020010823, on behalf of defendant Motor Sports of Scottsdale, Inc.

144.    Upon information and belief, the monies in the Wells Fargo account are not earnings, pursuant to A.R.S. § 12-1598(4), as they do not constitute compensation paid for personal services, and are not "wages, salary, commission, or bonus."

145.    Pursuant to A.R.S. § 12-1570.01(A)(2) and A.R.S. § 12-1577(A), Colson is entitled to issuance of a writ of garnishment against Wells Fargo Bank for monies held in the checking account of defendant Motor Sports of Scottsdale, Inc.

146.    Colson, by the filing of this Verified Amended Complaint and Application for Provisional Remedy with Notice, and the sworn affidavit of Colson dated November

20, 2008, filed concurrently herewith, has complied with the provisions of A.R.S. §§ 12-2401, *et seq*., and specifically A.R.S. § 12-2403.  Colson is therefore entitled to the issuance of writs of garnishment against Wells Fargo Bank.

147.   Upon information and belief, defendant Motor Sports of Scottsdale, Inc. has an account with Bank of America, account number 004878100888.  Upon information and belief, Bank of America is holding monies in account number 004878100888, on behalf of defendant Motor Sports of Scottsdale, Inc.

148.   Upon information and belief, the monies in the Bank of America account are not earnings, pursuant to A.R.S. § 12-1598(4), as they do not constitute compensation paid for personal services, and are not "wages, salary, commission, or bonus."

149.   Pursuant to A.R.S. § 12-1570.01(A)(2) and A.R.S. § 12-1577(A), Colson is entitled to issuance of a writ of garnishment against Bank of America for monies held in the checking account of defendant Motor Sports of Scottsdale, Inc.

150.   Colson, by the filing of this Verified Amended Complaint and Application for Provisional Remedy with Notice, and the sworn affidavit of Colson dated November 20, 2008, filed concurrently herewith, has complied with the provisions of A.R.S. §§ 12-2401, *et seq*., and specifically A.R.S. § 12-2403.  Colson is therefore entitled to the issuance of writs of garnishment against Bank of America.

151.   Colson will file such other and further pleadings or affidavits as are required by law or requested by the Court.

## COUNT NINE

### (Application for Provisional Remedy: Constructive Trust)

152.   All allegations in the previous paragraphs are incorporated as if fully set forth herein.

153.   Upon information and belief, defendant Motor Sports of Scottsdale, Inc. has an account with Wells Fargo Bank bearing the account number 402001823.

16

154.    Through the fraudulent and otherwise wrongful scheme employed by defendants detailed herein, Colson transferred $881,000 to Wells Fargo Account Number 402001823 controlled by the Maghami defendants.

155.    Upon information and belief, defendant Motor Sports of Scottsdale, Inc. has an account with Bank of America bearing the account number 004878100888.

156.    Through the fraudulent and otherwise wrongful scheme employed by defendants detailed herein, Colson wrote a check to Lamborghini of Scottsdale in the amount of $500,000 that was deposited into Bank of America account number 004878100888 controlled by defendant Motor Sports of Scottsdale, Inc. and the Maghami defendants.

157.    By reason of the fraudulent and wrongful manner in which the Maghami defendants obtained their alleged right, claim or interest in the funds transferred by Colson, and in order to prevent unjust enrichment, the Maghami defendants have no legal or equitable right, claim or interest therein, but instead are involuntary trustees holding such funds, or any property or profits derived therefrom, in constructive trust for Colson.

## COUNT TEN

### (Application for Provisional Remedy: Equitable Lien)

158.    All allegations in the previous paragraphs are incorporated as if fully set forth herein.

159.    Upon information and belief, defendant Motor Sports of Scottsdale, Inc. has a checking account with Wells Fargo Bank bearing the account number 402001823.

160.    Through the fraudulent and otherwise wrongful scheme employed by the Maghami defendants detailed herein, Colson transferred $881,000 to Wells Fargo Account Number 402001823 controlled by the Maghami defendants.

161.    Upon information and belief, defendant Motor Sports of Scottsdale, Inc. has an account with Bank of America bearing the account number 004878100888.

162.    Through the fraudulent and otherwise wrongful scheme employed by defendants detailed herein, Colson wrote a check to Lamborghini of Scottsdale in the

amount of $500,000 that was deposited into Bank of America account number 004878100888 controlled by defendant Motor Sports of Scottsdale, Inc. and the Maghami defendants.

163.    By reason of the fraudulent and wrongful manner in which the Maghami defendants induced Colson to transfer the funds and/or write a check to the Maghami defendants, and in order to prevent unjust enrichment, Colson holds an equitable lien against any ownership interest the Maghami defendant may have in the funds, or any property or profits derived therefrom.

## COUNT ELEVEN

### (Breach of Contract)

164.    All allegations in the previous paragraphs are incorporated as if fully set forth herein.

165.    On or about September 2007, Colson also purchased from the Maghami defendants a 2005 Lamborghini Murciélago for $250,000.

166.    Colson paid for that car with a check, and the check has been cashed.

167.    The Maghami defendants received adequate consideration for the Murciélago.

168.    At the time of purchase, Colson did not receive the title to that car.

169.    Colson is the rightful owner of the Murciélago, but despite making several demands for the title to that car, the Maghami defendants have never given Colson title to the Murciélago.

170.    The Maghami defendants' failure to deliver title to the Murciélago has proximately injured and impaired Colson and is in breach of the purchase agreement.

171.    As a direct and proximate result of defendants' material breaches of the Contract, Colson sustained harm and injury, including but not limited to, actual and consequential damages in an amount to be determined at trial.

18

172.   Colson's claims herein arise out of contract.  Colson, therefore, is entitled to an award of costs, expenses and attorneys' fees incurred herein pursuant to A.R.S. §12-341.01.

## PRAYER FOR RELIEF

**WHEREFORE**, Colson demands judgment against all defendants as follows:

A.   For actual, consequential, and punitive damages the amount of which will be proven at trial;

B.   For reasonable attorneys' fees;

C.   For the amount of costs incurred herein, and accruing costs to them;

D.   For pre-judgment and post-judgment interest at the maximum rate allowed by law; and

E.   For such other relief as may be deemed appropriate by the Court.

**WHEREFORE**, Colson further respectfully requests that the Court enter judgment against the Maghami defendants as follows:

A.   For a declaration that the Maghami defendants hold the $881,000 transferred by Colson to Wells Fargo Account Number 402001823, or any property or profits derived therefrom, as constructive trustees for the benefit of Colson.

B.   For a declaration that Colson holds an equitable lien against any ownership interest the Maghami defendants may have in the $881,000 transferred by Colson to Wells Fargo Account Number 402001823, or any property or profits derived therefrom.

C.   For a declaration that the Maghami defendants hold the $500,000 given by Colson to the Maghami defendants and subsequently deposited into Bank of America account number 004878100888, or any property or profits derived therefrom, as constructive trustees for the benefit of Colson.

D.   For a declaration that Colson holds an equitable lien against any ownership interest the Maghami defendants may have in the $500,000 t given by Colson to the Maghami defendants and subsequently deposited into Bank of America account number 004878100888, or any property or profits derived therefrom.

1     **WHEREFORE**, Colson further respectfully requests that the Court, upon

2 Colson's filing of the Bond pursuant to A.R.S. § 12-1573, issue a writ of garnishment

3 ordering the Sheriff of Maricopa County to immediately summon Wells Fargo Bank to

4 appear before the Court to answer the writ of garnishment.

5     **WHEREFORE**, Colson further respectfully requests that the Court, upon

6 Colson's filing of the Bond pursuant to A.R.S. § 12-1573, issue a writ of garnishment

7 ordering the Sheriff of Maricopa County to immediately summon Bank of America to

8 appear before the Court to answer the writ of garnishment.

9     DATED this 20th of November, 2008.

10                               /s/Sara K. Regan

11                               Thomas J. Salerno

                                 Brian M. McQuaid

12                               Sara K. Regan

13                               Andrew V. Banas

                                 Squire, Sanders & Dempsey L.L.P.

14                               Two Renaissance Square

15                               40 North Central Avenue

                                 Suite 2700

16                               Phoenix, Arizona  85004-4498

17                               Attorneys for Plaintiff Barton Colson

18

19

20

21

22

23

24

25

26

27

28