**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Burton Colson, | )    No. CV 08-2150-PHX-MHM |
| Plaintiff, | ) <br> )    **ORDER** |
| vs. | ) <br> ) |
| Javad Maghami a/k/a Javad Ghaemmaghami Marie Debernardi Ghaemmaghami, Javad and Marie Maghami d/b/a Scottsdale Lamborghini and/or Scottsdale Motorsports; Lamborghini of Scottsdale LLC, an Arizona limited liability company; Motor Sports Of Scottsdale, Inc., Motorsports of Scottsdale No. 2, LLC, and Automobili Lamborghini America, LLC, a Delaware Corporation, | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

Currently pending before the Court are Plaintiff's Motion for Partial Summary Judgment (Dkt.#148), Automobili Lamborghini America, LLC's Motion for Summary Judgment (Dkt.#145), and Plaintiff's Motion for a Continuance Pursuant to Rule 56(f) (Dkt.#154). Having considered these motions and their accompanying papers and determined that oral argument is unnecessary, the Court issues the following Order.

**I.    Factual Background**

For the purposes of Colson's motion for partial summary judgment, the undisputed facts are as follows:   The parties agree that Motor Sports of Scottsdale, Inc., an Arizona

corporation, operated both a high-end used car dealership in Scottsdale and a new car Lamborghini dealership in Scottsdale. (Dkt.#157 ¶ 1; Dkt. #151 ¶ 1) The Scottsdale dealership has been known as Motor Sports of Scottsdale or Lamborghini of Scottsdale. (Dkt.#156 at 4) Javad Maghami (Mr. Maghami) and Marie DeBernardi Maghami (Mrs. Maghami) own all of the stock of Motor Sports of Scottsdale, Inc. (Dkt.#152 ¶ 1; Dkt.#156 at 4-7) The parties dispute whether two related entities that were formed by Mr. and Mrs. Maghami, Lamborghini of Scottsdale, LLC and Motor Sports of Scottsdale No. 2, LLC, were ever operational. (Dkt. #156 at 4-5)

As part of Motor Sports of Scottsdale's regular course of business, it accepts deposits from customers for the purchase of automobiles, whether new or used. (Dkt.#157 ¶ 3; Dkt.#151 ¶ 3) Motor Sports of Scottsdale obtained its Lamborghini franchise/dealership agreement in approximately August of 2004, pursuant to a written Dealership Agreement. (Dkt.#157 ¶ 5; Dkt.#151 ¶ 5)

Prior to September 24, 2007, Motor Sports of Scottsdale sold Barton Colson several cars, including approximately five high-end used automobiles and new Lamborghini automobiles. (Dkt. #157 ¶ 7; Dkt. #151 ¶ 7) On September 24, 2007, Barton Colson came to the Motor Sports Scottsdale showroom. (Dkt.#157 ¶ 8; Dkt.#151 ¶ 8) Mr. Colson met personally with Mr. Maghami. (Dkt.#147 ¶ 4; Dkt.#152 ¶ 4) They discussed a rare and limited edition vehicle known as the Lamborghini Reventon (Dkt.#147 ¶ 5; Dkt.#152 ¶ 5). Maghami told Colson that Lamborghini intended to create only 20 Reventons. (Dkt.#147 ¶ 6; Dkt.#152 ¶ 6) Mr. Colson explained to Mr. Maghami that he had seen a limited edition Reventon Lamborghini at a Lamborghini trade show and was interested in purchasing one. (Dkt.#157 ¶ 9; Dkt.#151 ¶ 9)[1] When Colson expressed interest in the Reventon, Maghami stated that he may be able to get one for Colson. (Dkt.#147 ¶ 7; Dkt.#152 ¶ 7) Maghami

---

[1] Although parts of paragraph 9 are disputed (namely, the fact that Mr. Colson was a substantial car collector who, at the time of the taking of his deposition, had approximately 295-325 automobiles), the disputed portions of paragraph 9 are not relied upon in this Order.

explained that, to purchase a Reventon, Colson would need to immediately place a $500,000 deposit to be considered to purchase the car. (Dkt.#147 ¶ 8; Dkt.#152 ¶ 8) Colson was also told that he would need to submit an application for the Reventon and that if the application was approved, he would need to submit additional funds. (Dkt.#147 ¶¶ 16, 17, 18; Dkt.#152 ¶¶ 16, 17, 18)[2] The application was submitted to Lamborghini. (Dkt.#147 ¶ 21; Dkt.#152 ¶ 21) On or about September 24, 2007, Colson wrote Lamborghini of Scottsdale a check for $500,000 as a deposit for the Reventon. The check was subsequently deposited into Bank of America account number 004878100888. (Dkt.#147 ¶ 10; Dkt.#152 ¶ 10) "On the same day, Colson signed an agreement with the Maghami [D]efendants for the purchase of a Reventon." (Dkt.#147 ¶ 11; Dkt.#152 ¶ 11)

While the preceding sentence is quoted verbatim from Plaintiff's Statement of Undisputed Facts in Support of Plaintiff's Motion for Partial Summary Judgment (Dkt.#147 ¶ 11), it is not easy to determine the exact meaning of the "Maghami [D]efendants." Defendants partially admit this sentence in their Response (Dkt.#152 ¶ 11), adding an unrelated qualification.[3] Plaintiff did not define "Maghami [D]efendants" in its Statement of Facts; however, Defendants state that the "Maghami Defendants" are "all Defendants except Automobili Lamborghini America, LLC, a Delaware corporation" in their Response to Plaintiff's Statement of Undisputed Facts (Dkt.#152 at 1) Plaintiff did define the term "Maghami [D]efendants" in its Motion for Summary Judgment (Dkt.#148 at 2) as "Javad Maghami a/k/a Javad Ghaemmaghami and Marie DeBernardi Maghami a/k/a/ Marie

---

[2]  Although the parties dispute whether it was disclosed that the additional funds would be approximately six hundred thousand euros at this time or whether the full price had not yet been determined, the timing of this disclosure does not appear dispositive to the Court's analysis.

[3]  The only qualification that the Maghami defendants add to this statement is to add that the Purchase Order is a "stand by" Order which makes it subject to Lamborghini's approval to sell Motor Sports of Scottsdale one of the Reventons. (Dkt.#152 ¶ 11) However, this statement does not dispute the underlying statement that "[o]n the same day, Colson signed an agreement with the Maghami [D]efendants for the purchase of a Reventon." (Dkt.#147 ¶ 11; Dkt.#152 ¶ 11)

DeBernardi Ghaemmaghami, Javad and Marie Maghami d/b/a Scottsdale Lamborghini and/or Scottsdale Motorsports, Lamborghini of Scottsdale LLC, and Motor Sports of Scottsdale, Inc." Curiously, Motor Sports of Scottsdale No. 2, LLC does not appear to be included on this list. However, Plaintiff appears to accept Defendants' definition in Plaintiff's Reply, defining the "Maghami [D]efendants" to include "Javad Maghami a/k/a Javad Ghaemmaghami; Marie DeBernardi Maghami a/k/a/ Marie DeBernardi Ghaemmaghami; Javad and Marie Maghami d/b/a Scottsdale Lamborghini and/or Scottsdale Motorsports; Lamborghini of Scottsdale LLC; Motor Sports of Scottsdale, Inc.; and Motorsports of Scottsdale No. 2, LLC." (Dkt.#158 at 1-2) For the purposes of this Order, the term "Maghami Defendants" will hereafter be defined to include all Defendants except for Automobili Lamborghini America, LLC, a Delaware Corporation unless otherwise specified.

Many subsequent events appear to be disputed; however, it is undisputed that on or about January 16, 2008, Colson wired $881,000 into Wells Fargo Account Number 402001823, held by defendant Motor Sports of Scottsdale Inc. (Dkt.#147 ¶ 29; Dkt.#152 ¶ 29) Colson received confirmation from Wells Fargo Bank that the wire transfer was complete. (Dkt.#147 ¶ 30; Dkt.#152 ¶ 30) In response to Maghami's statement that Colson is "ready to give a $500,000 deposit," Lamborghini's representative stated: "I cannot guarantee you any slot. It would be interesting to have the contacts of the customer in order to keep updated the waiting list in case some customer drops out." (Dkt.#147 ¶ 32; Dkt.#152 ¶ 32)

The Maghami Defendants admit that Colson was never advised that there were no cars available (Dkt. #152 ¶ 33); however, they claim that Colson was aware that there was a waiting list and never demanded the return of his money. (Id.) The Maghami Defendants further assert that Mr. Maghami "at all times believed that Mr. Frigerio would make a Reventon available to Colson," and therefore, he saw no reason to return the deposit at this time. (Id.) However, Colson asserts that in his deposition, Mr. Maghami claimed that he did

not know there was a waiting list and admitted that he never told Colson about any such list.[4] (Dkt. # 156 ¶ 33)  Because of these discrepancies, the Court will treat this matter as a disputed issue of fact.

In August 2008, Colson personally visited a Lamborghini assembling factory in Italy to discuss the delivery date for the Reventon he purchased.  (Dkt.#147 ¶ 38; Dkt.#152 ¶ 38) At the same time, Colson's brother Brad Colson began contacting the Maghami defendants to discuss Colson's Reventon.  (Dkt.#147 ¶ 40; Dkt.#152 ¶ 40)

In September 2008, Colson contacted Pietro Frigerio, the Chief Operating Officer of defendant Automobili Lamborghini America, LLC ("Lamborghini America"), to inquire about the status of Reventon Number 10.  (Dkt.#147 ¶ 42; Dkt.#152 ¶ 42)  Frigerio informed Colson that Colson would never receive Reventon Number 10 or any other Reventon because they had all been sold.  (Dkt.#147 ¶ 44; Dkt.#152 ¶ 44)  Colson never received Reventon Number 10 or any other Reventon.  The Maghami defendants also admit that Colson never received the Reventon he purchased.  (Dkt.#147 ¶ 44; Dkt.#152 ¶ 44)

---

[4] Based on this and several other discrepancies between Mr. Maghami's Affidavit in support of the Maghami Defendants' Opposition to Summary Judgment, and his prior deposition testimony, Colson moves to strike the Maghami Affidavit, the Maghami Statement of Facts Response, all parts of the Maghami Defendants' Response that rely on these two documents, and asks that all portions of these documents be stricken from the record and not considered.  (Dkt. #156 at 20)  While "the general rule . . . is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony," Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991), the Ninth Circuit has also ruled that a district court must make a factual determination that an affidavit contradicting prior deposition testimony was actually a "sham" before striking such testimony because of the possibility that such discrepancies are an honest mistake, or a result of newly discovered evidence.  Id. at 266-67.  The Court is unwilling to find that Mr. Maghami's affidavit is wholly a "sham," given that the Maghami Defendants never had the opportunity to respond to this argument in the briefing; therefore, the request to strike will be denied.  The discrepancies between the affidavit and the deposition testimony obviously impugn Mr. Maghami's credibility; however, the Court is not permitted to make credibility determinations at summary judgment.  Slumier v. Verity, Inc., 606 F.3d 584, 587 (9th Cir. 2010) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when] ruling on a motion for summary judgment.") (internal quotations and citations omitted).

Colson filed a complaint alleging breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, negligent or intentional misrepresentation, fraudulent concealment, fraud, and aiding and abetting against a number of defendants, including Motor Sports of Scottsdale, Mr. and Mrs. Maghami, Lamborghini of Scottsdale, Motor Sports 2 of Scottsdale, and Automobili Lamborghini America, LLC. (Dkt.#123) Colson subsequently moved for partial summary judgment. (Dkt.#148) Automobili Lamborghini of America, LLC cross-moved for summary judgment. (Dkt.#145)

## II. Motion for Summary Judgment Standard

A motion for summary judgment may be granted only if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. S.E.C. v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982). To defeat the motion, the non-moving party must show that there are genuine factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## III. Colson's Motion for Partial Summary Judgment

Colson moves for partial summary judgment on Counts 1-5 of his amended Complaint. (Dkt.#148 at 2.) These Counts include: (1) Breach of Contract, (2) Breach of the Covenant of Good Faith and Fair Dealing, (3) Unjust Enrichment, (4) Negligent or Intentional Misrepresentation, and (5) Fraudulent Concealment. (Dkt.#123) Colson seeks judgment on these counts against defendants Javad Maghami, Marie Maghami, Motor Sports of Scottsdale, Inc., Lamborghini of Scottsdale LLC and Motor Sports of Scottsdale No. 2, LLC (collectively, the "Maghami Defendants"). In their Response, the Maghami Defendants concede the liability of Motor Sports of Scottsdale regarding the two contract-related claims,

the Breach of Contract claim and the Unjust Enrichment claim. (Dkt.#149 at 2) Given this concession, judgment will be entered against Motor Sports of Scottsdale for both these claims. The rest of this section will analyze whether summary judgement may be granted against the remaining Maghami Defendants for any of the remaining five claims.

**A.  Breach of Contract Liability for Remaining Maghami Defendants**

Colson initially argued that "the Maghami defendants" executed the Contract, breached the Contract, were paid for the Reventon, but never provided the Reventon. (Dkt.#148 at 6-7).

The Maghami Defendants' Response argues that there is no undisputed factual basis to hold any of the other defendants (besides Motor Sports of Scottsdale) liable for breach of contract. (Dkt.#149 at 8). The Maghami Defendants' Response points out that Lamborghini of Scottsdale's only tie to the contract was the fact that Colson's check was made payable to it rather than to Motor Sports of Scottsdale, and that all money paid by Mr. Colson was ultimately deposited or wired into the Motor Sports of Scottsdale account. (Id. at 9)

Colson's Reply focuses on whether Lamborghini of Scottsdale is liable for the breach of contract claim (and thus appears to concede that summary judgment against the other Maghami Defendants [except Motor Sports of Scottsdale] is inappropriate by failing to marshal undisputed facts that would suggest that the other individual defendants are also personally liable for breach of contract).[5]  (Dkt.#158 at 7-8)  Colson asserted that "Lamborghini of Scottsdale . . .agreed to sell Plaintiff the Reventon," and that it . . . cashed [P]laintiff's $500,000 check, which was a deposit for the Reventon" in his Motion for Summary Judgment. (Dkt.#148 at 6-7)  Regarding Lamborghini of Scottsdale, the Reply alleges that it is undisputed that this entity operated the dealership and retained Colson's funds. However, merely accepting funds would not be a sufficient factual basis for judgment that Lamborghini of Scottsdale breached its contract with Colson. To prevail on a breach of

---

[5] Colson's Reply does raise a number of derivative liability theories (such as alter ego liability) that are addressed below in section F.; this section will only address *direct* liability for the breach of contract claim.

contract claim, it is axiomatic that a party must first prove that a contract existed. Graham v. Asbury, 112 Ariz. 184, 185, 540 P.2d 656, 657 (1975) ("To bring an action for the breach of the contract, the plaintiff has the burden of proving the existence of the contract, its breach and the resulting damages."). Defendants dispute whether Lamborghini of Scottsdale had a valid contract with Colson. (Dkt.#149 at 8-9) Although Defendants concede that the pre-printed Purchase Order that formed the basis of the relationship of the parties was on a form entitled "Lamborghini Scottsdale," Defendants claim that "[o]nly Motor Sports of Scottsdale was the authorized Lamborghini new car dealer and the only entity that had the legal ability to contract for the purchase of the Reventon and secure the same form Lamborghini." (Dkt.#149 at 8) Because the existence of a contract between Lamborghini of Scottsdale and Colson is disputed, the Court cannot grant summary judgment against Lamborghini of Scottsdale on this claim. Accordingly, Colson's Motion for Partial Summary Judgment on his contract claim is granted only against Motor Sports of Scottsdale.

**B.      Unjust Enrichment for the Remaining Maghami Defendants**

Colson's Motion for Summary Judgment asserts that all of the Maghami Defendants are liable for unjust enrichment. (Dkt.#148 at 7-8) While Motor Sports of Scottsdale accepts liability for unjust enrichment, the remaining Maghami Defendants dispute liability on this claim. (Dkt. #149 at 9) Colson's Reply points out undisputed facts to support this claim only with respect to Lamborghini of Scottsdale. To demonstrate a claim for unjust enrichment, Plaintiff must show that defendant has been enriched, Plaintiff has been impoverished, there is a connection between the enrichment and the impoverishment, there is an absence of justification for the impoverishment, and that Plaintiff lacks a legal remedy. Trustmark Ins. Co. v. Bank One, Ariz., 202 Ariz. 535, 541, 48 P.3d 485, 491 (App. 2002). It appears undisputed that (1) Colson paid Lamborghini of Scottsdale at least $500,000 for the purchase of a car (an impoverishment), (2) Lamborghini of Scottsdale retained the money and did not return it to Colson (an enrichment), and (c) Lamborghini of Scottsdale did not deliver a car to Colson, through no fault of Colson (an absence of justification for the enrichment and impoverishment). (Dkt.#147 ¶¶ 10, 29, 44; Dkt.152 ¶¶ 10, 29, 44; Dkt.#156 ¶¶ 1-3;

Dkt.#157 ¶ 26)  These undisputed facts make summary judgment against Lamborghini of Scottsdale appropriate on Colson's unjust enrichment claim.

The Maghami Defendants assert that a number of facts are disputed notwithstanding their earlier admissions regarding these facts in their answer.  However, "[u]nder federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court."  American Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988).  The underlying purpose in requiring an answer to a pleading is because admissions in the pleadings "have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact."  Id.  Thus, "[f]actual assertions in the pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them."  Id.  Because of this rule, Lamborghini of Scottsdale's admission that it "own[ed] and operate[d] the dealership,"(Dkt.# 130 ¶ 15), in its answer will be binding, notwithstanding its attempt to dispute this fact now.  As explained above, Colson's Reply focused on liability only for Lamborghini of Scottsdale on this claim and did not present a factual basis for holding Mr. and Mrs. Maghami or Motor Sports 2 of Scottsdale directly liable for the breach of good faith and fair dealing.

Thus, Colson is granted partial summary judgment against both Motor Sports of Scottsdale and Lamborghini of Scottsdale on his unjust enrichment claim; however, there do not appear to be sufficient undisputed facts to support summary judgment against the remaining Maghami Defendants.

### C.     Liability for Breach of Covenant of Good Faith and Fair Dealing

Colson seeks summary judgment against all of the Maghami Defendants (including Motor Sports of Scottsdale) on its Breach of Covenant of Good Faith and Fair Dealing claim. Arizona recognizes an implied covenant of good faith and fair dealing in every contract. Rawlings v. Apodaca, 151 Ariz. 149, 153, 726 P.2d 596, 600 (1986).  In essence, this covenant means that "neither party will act to impair the rights of the other to receive the benefits which flow from their agreement or contractual relationship."  Id., 151 Ariz. at 153-54, 726 P.2d 600-601.  Colson asserts that "[b]y failing to provide plaintiff with a  Reventon

that plaintiff had paid for, by failing to secure a Reventon as promised, and by failing to inform plaintiff about the status of Reventons [or] his place on any waiting list, the Maghami [D]efendants are liable for the breach of the implied covenant of good faith and fair dealing." (Dkt.#148 at 7)

However, as the Maghami Defendants point out in their Response, there are a multitude of disputed factual questions surrounding this issue. (Dkt.#149 at 9) Mr. Maghami asserts that he did everything he could do to secure the Reventon; he also asserts that he believed that a Reventon would become available later, after the initial Reventon he had hoped to secure Colson fell through. (Dkt.#149 at 10) The Maghami Defendants also assert that it is a customary business practice to place customer deposits in the dealership's general fund, and that they could not have known that the luxury car business would face as steep a decline as it did at the end of 2008. (Dkt.#149 at 9-11)

Colson disputes these facts and asserts that the Maghami "deliberately refused" to communicate the fact that the dealership "would not be immediately receiving a car," and instead kept his money and avoided his inquiries for eight months. (Dkt. #158 at 8) Almost every fact relating to the period after Colson submitted his deposit until he ultimately discovered that he would not be receiving a Reventon several months later is hotly disputed, as is the motivation behind the Maghami's actions (such as whether they were motivated by good faith or bad faith). (Dkt.#147 ¶¶ 33-37; Dkt.#151 ¶¶ 33-37) Because these disputed facts are crucial to the determination of whether the Maghami Defendants breached the duty of good faith and fair dealing, it is inappropriate for the Court to grant summary judgment on this claim. See National Basketball Ass'n v. SDC Basketball Club, Inc., 815 F.2d 562, 569-70 (9th Cir. 1987) (explaining that questions of fact as to whether duty of good faith and fair dealing was breached, and if so, who breached the duty, precluded summary judgment). Accordingly, Colson's Motion for Partial Summary Judgment on his breach of good faith and fair dealing claim is denied.

**D.     Negligent or Intentional Misrepresentation & Fraudulent Concealment**

Colson also moved for summary judgment regarding his misrepresentation and fraudulent concealment claims against all of the Maghami Defendants. (Dkt.#148 at 8) A party is liable for a negligent misrepresentation when it supplies false information for the guidance of others in a business transaction and fails to use reasonable care in supplying the information. St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins. Co., 154 Ariz. 307, 312 (1987). A party is liable for fraudulent concealment for "intentionally prevent[ing] [an]other from acquiring material information." Wells Fargo Bank v. Arizona Laborers, Teamsters, and Cement Masons Local No. 395 Defined Contribution Pension Trust Fund, 201 Ariz. 474, 496, 38 P.3d 12, 34 (2002); see also Fomento v. Encanto Business Park, 154 Ariz. 495, 501, 744 P.2d 22, 28 (App. 1987) ("A representation stating the truth so far as it goes but which the maker knows or believes to be materially misleading because of his failure to state additional or qualifying information is a fraudulent misrepresentation.") (internal quotations and citations omitted).

Colson argues that the Maghami Defendants are liable for misrepresentation and fraudulent concealment because they misled him regarding the purchase of the Reventon by telling him that they had access to a Reventon when then were being told otherwise by Lamborghini. Colson also argues that for eight months after he deposited an additional $881,000, the Maghami Defendants repeatedly failed to notify him (Colson) that they had no Reventon to deliver. Colson points to ¶¶ 28, 31-33, 36-37, 39, 41, 47 of his Statement of Facts (Dkt.# 147); however, these facts appear to be hotly disputed. (Dkt.#156) The Maghami Defendants assert that the reason they did not tell Colson that no Reventon was available was based on their good faith but mistaken belief that another Reventon would become available. (Dkt.#149 at 13-14) The Maghami Defendants further assert that Mr. Frigerio continually assured Mr. Maghami that a Reventon would ultimately be made available to Colson if he was patient. Because these facts are material and disputed, summary judgment on this issue is inappropriate.

The Maghami Defendants also assert that this claim would be barred by the economic loss rule. The economic loss rule limits a "contracting party to contractual remedies for the

recovery of economic losses unaccompanied by physical injury to person or other property."
Flagstaff Affordable Housing Ltd. P'ship v. Design Alliance, Inc., 223 P.3d 664, 667 (Ariz. 2010). Since Motor Sports of Scottsdale is a contracting party, Colson is limited to contractual remedies for the recovery of economic losses against Motor Sports of Scottsdale since there does not appear to be any allegation of physical injury to a person or any other property. Thus, the economic loss rule would bar Colson from recovering for misrepresentation and fraudulent concealment against Motor Sports of Scottsdale. However, since none of the other Maghami Defendants have been deemed contracting parties, the economic loss rule would not bar Colson from recovering against them for other torts. Because they do not appear to have been parties to the contract, Mr. and Mrs. Maghami could still theoretically be liable for misrepresentation and fraudulent concealment. It should be noted that Colson may ultimately have to elect between the tort and contractual theories of liability at trial.[6] Accordingly, Colson's motion for partial summary judgment on these claims against Motor Sports of Scottsdale is denied. Colson's motion for partial summary judgment on Negligent Misrepresentation and Fraudulent concealment against the remaining Maghami Defendants is denied based on disputed issues of material fact.

## F.    Alter Ego Liability

After Motor Sports of Scottsdale conceded that it was liable for breach of contract and unjust enrichment in its Response to Colson's motion for summary judgment, Colson asserted in his Reply that the Maghami Defendants were the alter egos of Mr. and Mrs. Maghami. Because of this, Colson asserts that justice requires that Mr. and Mr. Maghami be held personally liable (although he does not specify for which causes of action, specifically). Colson asserts that there was a unity of interest in Mr. and Mrs. Maghami and their businesses and that failing to hold Mr. and Mrs. Maghami personally liable would result in injustice. (Dkt.#158 at 5-7) While it is true that theoretically, Mr. and Mrs. Maghami

---

[6] The parties should be on notice that the Court may direct supplemental briefing on the appropriate timing and procedure for this election (and whether it is required) at the pretrial conference.

could be personally liable for their own tortious acts,[7] the fact that this argument was not raised until the reply means that the Maghami Defendants were not given a fair opportunity to controvert these purportedly undisputed facts. <u>Cutrona v. Sun Health Corp.</u>, 2008 WL 4446710 at *18 (D. Ariz. 2008) ("[A]rguments raised for the first time in a reply are generally not considered by the Court, because to do so unfairly deprives the opposing party of the opportunity to meaningfully respond."). The Court is therefore unable to grant summary judgment on this theory.

### G. Summary

In summary, judgment is granted against Motor Sports of Scottsdale for Colson's breach of contract and unjust enrichment claims. Judgment is also granted against Lamborghini of Scottsdale for Colson's unjust enrichment claim, but denied as to Mr. and Mrs. Maghami and Motor Sports of Scottsdale No. 2, LLC. Judgment is denied on the breach of good faith and fair dealing claim; this claim will proceed against all of the Maghami Defendants. Also, Colson's claims for Misrepresentation and Fraudulent Concealment will proceed against all of the Maghami Defendants except for Motor Sports of Scottsdale.

## IV. Automobili Lamborghini's Motion for Summary Judgment

Defendant Automobili Lamborghini America, LLC, ("ALA") seeks summary judgment on all of Colson's claims in his First Amended Complaint. (Dkt.#145) ALA asserts that the factual record is clear with respect to ALA's lack of involvement with Motor Sports' fraud. (Dkt. #145 at 3) It also asserts that "neither ALA nor any Lamborghini company knew of Motorsports' theft or participated in the theft in any manner" and that "no Lamborghini company ever received so much as one penny of Colson's deposit." (Id.)

---

[7] <u>See</u>, <u>e.g.</u>, <u>Marylin Nutraceuticals, Inc. v. Improvita Health Prods.</u>, 663 F. Supp. 2d 841, 847 (D. Ariz. 2009) (explaining that "a director or officer of a corporation is individually liable for fraudulent acts or false representations of his own ... even though his action in such respect may be in furtherance of the corporate business") (quoting <u>Albers v. Edelson Technology Partners L.P.</u>, 201 Ariz. 47, 52, 31 P.3d 821 (App. 2001)).

Colson set forth three theories of liability for ALA in his Amended Complaint: (1) that ALA aided and abetted Motor Sports in committing the fraud, (2) that ALA breached a duty to warn Colson, and (3) that Motor Sports was an agent of ALA. (Dkt. #123)

ALA contends that it is entitled to summary judgment because (1) there is no factual support for Colson's assertion that ALA aided and abetted Motor Sports' fraud; (2) Colson cannot proceed against ALA on a "failure to warn" theory because no such independent tort is recognized in Arizona, and no suggestion that ALA had a relationship with Colson sufficient to give rise to any duty towards him; (3) Motor Sports was not an agent of any Lamborghini company, and thus ALA cannot be vicariously liable for Motor Sports' conduct; and (4) ALA cannot be liable because it was not a franchisor of Motor Sports at the time of the alleged fraud (at that time, the Lamborghini Franchisor was an Italian company, Automobili Lamborghini, S.p.A. ("ALSPA"). (Dkt.#145) Each argument, along with Colson's response, is addressed below.

### A.     Aiding and Abetting Liability

ALA contends that there is no factual support for the notion that ALA "aided and abetted" the fraud perpetrated by Motor Sports because there is no evidence that ALA knew that Maghami intended to defraud Colson or that ALA substantially assisted Motor Sports' fraud. (Dkt.#145 at 8)

Colson responds by asserting that the Maghami Defendants defrauded him and that genuine issues of fact remain as to whether ALA knew that the Maghami Defendants committed torts. (Dkt. #154 at 13-14) He also argues that ALA substantially assisted the Maghami Defendants in the commission of torts by ignoring Colson's questions about the Reventon until after the Maghami Defendants had already spent Colson's money. (Dkt.#154 at 16)

To succeed on a claim for aiding and abetting a fraud, Plaintiff must demonstrate that a Defendant had knowledge of a fraudulent scheme and that the Defendant provided substantial assistance which was the cause of the Plaintiff's damages. <u>Dawson v. Withycombe</u>, 216 Ariz. 84, 102 (App. 2007) 216 Ariz. at 102 (aiding and abetting claim

failed where there was no evidence of knowledge of a fraudulent scheme); <u>Sec. Title Agency, Inc. v. Pope</u>, 219 Ariz. 480, 491-92 (App. 2008) (aiding and abetting claim requires causal connection between defendant's assistance and tortfeasor's commission of tort). While Colson is correct that a Plaintiff need not prove that the defendant had actual knowledge of all of the details of the alleged fraud, a Plaintiff must still prove that the Defendant had actual knowledge that a fraud either "had been" or "would in fact" be committed. <u>Dawson</u>, 216 Ariz. at 103.

There does not appear to be any evidence from which a reasonable jury could find that ALA had actual knowledge of the fraud. Drawing all factual inferences in favor of Colson, the most that a jury could infer was that ALA knew that the Maghami Defendants continued to hold Colson's deposits while they attempted to locate a Reventon for him. This would be insufficient to support a finding of liability for aiding and abetting, given the common practice among dealers to hold onto customer deposits while attempting to locate a vehicle for a customer. Even assuming that ALA had information about "suspicious activity," this would not be sufficient for a finding of scienter. <u>Stern v. Charles Schwab & Co.</u>, 2009 WL 3352408 at *7, No. CV 09-1229 (D. Ariz. October 16, 2009) (explaining "suspicion is not enough. The aiding and abetting defendant must be aware of the fraud."). For similar reasons, Colson's attempt to assert that ALA "substantially assisted" the Maghami Defendants in committing the fraud fails because a Plaintiff must demonstrate that the Defendant *knew* it was assisting in the commission of a tort in order to be liable for substantially assisting a fraud. Colson has failed to identify any evidence that would support a finding of actual knowledge. Even assuming that ALA (1) allowed Motor Sports to operate as a dealer, (2) failed to disclose to Colson that Lamborghini had threatened to terminate the dealership for breaching the Dealership Agreement, (3) failed to disclose to Colson that the Reventon was sold out, and (4) ignored Plaintiff's telephone calls, none of these facts could support a finding of actual knowledge of the Maghami Defendants' fraud. For this reason, the Court will grant summary judgment in favor of ALA on Colson's aiding and abetting claim.

### B. Failure to Warn

ALA also argues that it is entitled to summary judgment on Count Twelve of Colson's Amended Complaint ("failure to warn") because Arizona does not recognize an independent tort of "failure to warn." (Dkt.#145 at 10) Because of this, ALA asserts that Colson must establish that ALA owed him some independent duty from which a "duty to warn could arise. (Id.) ALA further asserts that there is no evidence to support the existence of any such independent duty. (Id.)

According to the Arizona Court of Appeals, "[t]here is no separate tort named 'failure to warn.' Where liability is incurred by reason of a 'failure to warn' it is because there is found present a duty to prevent harm to the individual who is injured." McGeorge v. City of Phoenix, 117 Ariz. 272, 277-78, 572 P.2d 100, 105-106 (App. 1977). Colson cites two cases that mention "failure to warn;" however, these cases stand merely for the proposition that failure to warn may arise out of an already existing independent duty. (Dkt.#154 at 12-13) (citing Martinez v. State, 177 Ariz. 270, 272 (App. 1993) and Robertson v. Sixpence Ins. of Am., 163 Ariz. 539, 541 (App. 1990)). Colson fails to address McGeorge's clear statement that no such tort exists in Arizona. (Dkt.#154 at 12-12)

Alternatively, Colson argues that ALA owed to Colson a duty to supervise Motor Sports' activities, that this duty gave rise to a "duty to warn," and that ALA breached the "duty to warn" by failing to warn Colson that the Maghami Defendants were going to steal his money. (Dkt.#154 at 13) However, Colson does not cite any authority that would support that a franchisor has a duty to supervise a franchisee. Colson relies on Dejonghe v. E.F. Hutton, 171 Ariz. 341 (App. 1991); however, Dejonghe appears inapplicable because it concerned an employer-employee relationship, not a franchisor-franchisee relationship. As ALA points out, "long-standing authority explicitly rejects the notion that a franchisor has a duty to supervise its franchisees." See, e.g., Freedman v. Tenn. Dev. Corp., 1993 U.S. Dist. LEXIS 11021, No. 91-475, at *44-45 (D. Del. Aug. 3, 1993) ("no duty exists in law requiring a franchisor to supervise in [franchisee's] financial dealings with third parties"); Cullen v. BMW of North America, Inc., 691 F.2d 1097, 1101 (2d Cir. 1982) (franchisor not liable for

negligent failure to "police the methods or operation of [its] independent franchisee . . . because of its precarious financial condition").

Moreover, even assuming arguendo that there was a duty to supervise, Colson fails to provide any support for his contention that a duty to supervise could provide the basis for a "failure to warn" under Arizona law. (Dkt.#154 at 13)  The only case he cites, <u>Beneficial Commercial Corp. v. Murray Glick Datsun, Inc.</u>, 601 F. Supp. 770 (S.D.N.Y. 1985), was decided under New York law where "failure to warn" is an independent tort.  It is thus inapplicable here.

Finally, Colson's argument that a jury could find that ALA had reason to suspect that the Maghami Defendants were going to steal Colson's money (and therefore should have warned him) is farfetched.  Even assuming (1) that ALA knew that the Maghami Defendants had a history of missing payments and misrepresenting financial matters, (2) that ALA terminated the Maghami Defendants' dealership as a result of these issues, and (3) that ALA knew that Colson paid for the Reventon, these facts would not support a finding that ALA should somehow have known that the Maghami Defendants would attempt to steal Colson's money and that ALA therefore had a duty to warn Colson of this possible contingency.  Quite simply, "[t]he fact that a franchisor may know that one of its franchisees is having financial difficulties or may not be accurately disclosing its financial data does not mean that a franchisor knows that a franchisee is about to steal a customer deposit," as ALA points out. (Dkt.#160 at 7-8)  Thus, drawing all factual inferences in favor of Colson, these facts could not support a finding in Colson's favor.

Given that Arizona does not recognize an independent tort of "failure to warn," and given that Colson has not provided any basis from which an independent duty might have arisen to create a duty to warn, ALA is hereby granted summary judgment on Count Twelve of Colson's Amended Complaint. (Dkt.#123)

### C.  Vicarious Liability/ Agency Theory

The sole basis for Colson's assertion of liability against ALA on Counts One through Six of the Amended Complaint (Dkt.#123) is that "at all times relevant to Colson's claims,

[the Maghamis] were acting as agents of, and on behalf of, Lamborghini America." (Dkt.#123 ¶ 10).[8]  ALA seeks summary judgment that it cannot be liable for these counts because it did not have an agency relationship with Motor Sports of Scottsdale.  (Dkt.#145 at 12)

Under Arizona law, there are four ways an agency relationship may be created: (1) by "express agency," where a principal gives express oral or written delegation of power to the agent; (2) "agency by implication," where a principal's intention to create an agency is inferred by the words or conduct of the parties; (3) "agency by ratification," where the principal subsequently affirms the agent's conduct or accepts the benefits of the agent's conduct; and (4) "apparent agency," where the conduct of the principal would cause a reasonable person to infer the existence of an agency relationship and rely upon such inference.  State Farm Mut. Auto. Ins. Co. v. Mendoza, 2006 WL 44376 at *17 (D. Ariz. 2006).  Each potential method is analyzed below.

## 1.    Express Agency

ALA points to the Lamborghini Dealer Agreement as evidence that there was no express agency relationship between it and Motor Sports.  (Dkt.#145 at 13)  Article 3(2) of this Agreement states that the dealer is "an independent entrepreneur" who is not authorized as an agent to act on behalf of, or bind, Lamborghini.  (Dkt.#146 ¶ 7)  Though Colson purports to dispute ¶ 7 in his Controverting Statement of Facts (Dkt.#153 ¶ 7), his assertion that "Lamborghini dealers were not only authorized to act on Lamborghini's behalf, but were required to take actions as representatives of Lamborghini," (Id.), is a legal conclusion that does not create a dispute of material fact.  While Colson cites to a number of paragraphs of his Controverting Statement of Facts (Dkt.#153 ¶ 7, citing ¶¶ 57-58, 61, 66, 70, 93, 97), none of these paragraphs challenge the authenticity of the Dealer Agreement or the accuracy of

_____

[8]  Apparently, Colson's counsel has stipulated that Colson is not proceeding against ALA on an agency theory for Counts Eight through Ten.  (Dkt.#145 at 12 n.2) Count Eleven has been resolved.

the excerpt cited above. Colson has failed to point to any evidentiary basis to support a finding that an "express agency" existed between ALA and Motor Sports.

### 2. Agency by Implication

ALA argues that the record lacks any evidence by which it can be inferred that any Lamborghini company intended to create an agency relationship between itself and Motor Sports. (Dkt. #145 at 13) ALA points out that during Colson's deposition, he explicitly admitted that nobody from ALSPA or ALA ever represented to him that Motorsports was an agent for purposes of selling the Reventon. (Id.)

Colson responds by suggesting that a general agency can be implied because the evidence in the record suggests that Lamborghini "controls nearly every aspect of its dealerships." (Dkt.# 154 at 10) He argues that "Lamborghini gave Maghami the express authority to act as its dealer" and thus "impliedly authorized the Maghami defendants to take all actions necessary to carry out the express authorized acts." (Id.) However, even assuming for the sake of argument that ALA did have such a level of control over Motor Sports,[9] this fact would be irrelevant under Arizona law. The level of control that ALA may or may not exert over a dealership is not the test in Arizona for determining whether an "agency by implication" exists. "Agency by implication" requires evidence that a principal intended to create an agency relationship. Phoenix Western Holding Corp. v. Gleeson, 500 P.2d 320, 326 (App. 1972). Colson failed to point to any act or statement by ALA that would suggest that it intended to create an agency relationship. As mentioned above, the Dealer Agreement explicitly disavows the existence of an agency relationship. Thus, there appears to be no evidence in the record that would support a finding that there was an agency relationship by implication between Motor Sports and ALA.

### 3. Agency by Ratification

---

[9] ALA disputes that it controlled nearly every aspect of the relationship in its Controverting Statement of Facts (Dkt.#161 ¶¶107-35).

ALA argues that the record lacks any evidence to suggest that any Lamborghini company ratified Motor Sports' actions. (Dkt.#145) ALA asserts that no Lamborghini company ever affirmed Motor Sports' conduct or received any benefit from Motor Sports' fraud. (Id.)

For agency by ratification to exist, there must be evidence that an alleged principal had knowledge of material facts related to an act by a person claiming to be its agent and accepted benefits of the unauthorized act. Phoenix Western Holding Corp., 500 P.2d at 326-27. Colson argues that because ALA failed to notify Colson that the Reventon would not be delivered after being told by both Colson and the Maghami Defendants that the Maghami Defendants sold the car to Plaintiff, ALA effectively "ratified" the sale. (Dkt.#154 at 11) However, Colson has failed to identify any benefit of the authorized act that ALA accepted or any act by ALA that "affirmed" Motor Sports' conduct. (Id.) Thus, even assuming ALA did have knowledge of the material facts (something that is questionable, given the lack of evidence regarding its knowledge of the fraudulent scheme discussed in the "aiding and abetting" section above), there would not be a sufficient evidentiary basis to support a finding of agency by ratification.

### 4.     Apparent Agency/ Agency by Estoppel

ALA argues that the record lacks evidence to support a finding of apparent agency. (Dkt.#145 at 14) While ALA admits that the record does establish that Motor Sports was an authorized Lamborghini dealer who displayed Lamborghini brand signs, it points to Arizona cases holding that an apparent agency cannot be established merely by showing that a motor vehicle dealer is an authorized dealer who displays brand signage. (Id.) (citing Am. Motor Sales Corp. v. Sup. Ct. , 494 P.2d 394, 396 (App. 1972) (automobile dealer agreements, advertising and stationary not indicia of agency); see also Ocana v. Ford Motor Co., 992 So. 2d 319, 326-27 (Fl. App. 2008) (permitting dealer to "hold himself out" as authorized dealer, displaying Ford logos and other advertising, providing warranty, and training personnel insufficient to establish agency)). ALA argues that the record lacks any other facts upon which an agency relationship could be established. (Dkt.#145 at 14) It further points out that

Colson "candidly admitted during his deposition that nobody from ALSPA or ALA or Motorsports ever told him that Motorsports was an agent for the manufacturer." (Id.)

Colson argues that "[a] principal may be estopped to deny the agent's authority where he has allowed others to detrimentally rely on the apparent authority of the agent." (Dkt.#154 at 10) (quoting <u>Gertz v. Selin</u>, 112 Ariz. 562, 564 (Ariz. 1976)). Colson asserts that "Lamborghini led [P]laintiff to believe that the Maghami defendants were its agents and authorized to act on its behalf by authorizing them to be a Lamborghini dealer," and that he would not have done business with the Maghami Defendants but for their status as a Lamborghini dealer. (Dkt. #154 at 10).

However, to prove apparent agency/ agency by estoppel, Colson must point to conduct by Lamborghini that Colson reasonably could have relied upon to infer the existence of an agency relationship. <u>State Farm</u>, 2006 WL 44376 at *17. Colson's reliance on the Lamborghini brand signage as a means of establishing apparent agency/agency by estoppel fails to account for the Arizona cases holding that a franchisor's corporate identity does not provide a basis for a finding of apparent agency. In addition to the <u>Am Motor Sales</u> case cited above, <u>Seekings v. Jimmy GMC of Tucson, Inc.</u>, 131 Ariz. 1 (App. 1981), also held that an automobile manufacturer was not liable to a dealership's customer under an agency theory because the sale of a vehicle was an ordinary retail transaction and the manufacturer was not a party to the transaction. Colson has failed to point to any other action by ALA that would create an apparent agency/agency by estoppel.

Given that Colson's failure to support his theory of ALA's vicarious liability based on an agency relationship with Motor Sports for Counts One through Six of the Amended Complaint (Dkt. #123), summary judgment is hereby granted in favor of ALA on these claims.

### D.  Timing of ALA's agreement with ALSPA

Finally, ALA argues that it cannot be liable for the conduct alleged in the Amended Complaint because it did not assume the U.S. Lamborghini Dealer Agreement from its

predecessor-in-interest, ALSPA, and did not become the "franchisor" under Motorsports' Lamborghini Dealer Agreement, until May 2008. (Dkt. #145 at 15)

Colson contends that (a) ALA assumed the contracts from SPA in July 2007 and (b) ALA is independently liable for its own actions after May 2008. (Dkt. #154 at 16-17) However, there appears to be a number of factual disputes regarding the timing and execution of the documents, which documents governed, and when the documents would be implemented. (Dkt. #146 ¶¶ 5, 49, 64) (Dkt. #153 ¶¶ 5, 49, 64) (Dkt.#161 ¶ 95). Accordingly, this part of ALA's motion for summary judgment will be denied. However, this argument is an alternative basis for granting summary judgment to ALA, and does not prevent the Court from granting summary judgment in favor of ALA based on the arguments mentioned above.

### E.   Summary

Given that there is no evidentiary and/or legal basis to support a finding (1) that ALA aided and abetted Motor Sports' fraud, (2) that ALA committed the alleged tort of "failure to warn," or (3) that Motor Sports is an agent of ALA, making ALA vicariously liable for Motor Sports' conduct, ALA will be dismissed from this action.

## V.   Colson's Rule 56(f) Motion

Colson requested a continuance of ALA's summary judgment motion pursuant to Federal Rule of Civil Procedure 56(f), arguing that he needed to conduct additional discovery as to whether the Maghami Defendants were agents of Lamborghini and whether Lamborghini aided and abetted the fraud. Specifically, Colson desired to (1) review ALA's supplemental responses to his discovery requests and (2) depose one additional witness.

The purpose of a Rule 56(f) motion is to ensure that parties have a reasonable opportunity to prepare their case. U.S. v. Real Property Located at 414 Riverside Rd., Oakview, CA, 1994 WL 6603 at *5 (9th Cir. Dec. 9, 1993). It appears that Colson waited until six weeks after ALA filed its summary judgment motion to serve ALA with a one and a half page supplemental discovery letter, virtually ensuring that Colson would not receive a reply in time to respond to the motion for summary judgment. Moreover, the supplemental

discovery request was served solely by regular U.S. Mail, rather than by email or fax, which had apparently been the parties' past practice. (Dkt.#159 at 4). ALA responded to the supplemental discovery in 24 hours. (Dkt.#159 at 4) Similarly, it appears that Colson did not notice the additional witness's deposition until November 24, 2009, one week prior to the date its response was due, notwithstanding the fact that Colson must have known that this witness existed, given his prior testimony that he spoke with the witness at the dealership on September 17, 2009. (Dkt.#159 at 10)

Given that it appears that Colson failed to diligently pursue discovery, this request will be denied. Real Property Located at 414 Riverside Rd., Oakview, CA, 1994 WL 6603 at *5 (denying continuance where failure to conduct discovery was due to movant's own delay); Pfingston v. Ronan Eng'g Corp., 284 F.3d 999, 1005 (9th Cir. 2002) (Rule 56(f) motion denied due to lack of diligence).

**VI.    Conclusion**

For the reasons stated above, Colson's Motion for Partial Summary Judgment is partially granted and partially denied. ALA's Motion for Summary Judgment is granted. Colson's Request for a Rule 56(f) Continuance is denied.

**Accordingly,**

**IT IS HEREBY ORDERED** granting in part and denying in part Plaintiff's Motion for Partial Summary Judgment (Dkt.#148)**.** Judgment is granted against Motor Sports of Scottsdale for Colson's breach of contract and unjust enrichment claims. Judgment is also granted against Lamborghini of Scottsdale for Colson's unjust enrichment claim, but denied as to Mr. and Mrs. Maghami and Motor Sports of Scottsdale No. 2, LLC. Judgment is denied on the breach of good faith and fair dealing claim. Also, Colson's claims for Misrepresentation and Fraudulent Concealment will proceed against all of the Maghami Defendants except for Motor Sports of Scottsdale.

**IT IS FURTHER ORDERED** granting Automobili Lamborghini America, LLC's Motion for Summary Judgment (Dkt.#145). Automobili Lamborghini America, LLC will hereby be dismissed from this action.

1    **IT IS FURTHER ORDERED** denying Plaintiff's Request for a Continuance

2    Pursuant to Rule 56(f) (Dkt.#154).

3        DATED this 8th day of July, 2010.

4

5

6    _____
            Mary H. Murguia
7        United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28